JOHN SCHENDT, APPELLANT, V. JOHN L. DEWEY, M.D., APPELLEE.
CINDY SCHENDT, APPELLANT, V. JOHN L. DEWEY, M.D.,
APPELLEE.

568 N.W.2d 210

Filed August 8, 1997.   Nos. S-95-1197, S-95-1198.

Richard J. Dinsmore and William G. Garbina for appellants.

John R. Douglas and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

PER CURIAM.

John L. Dewey, M.D., at all relevant times, held himself out as an allergy specialist. He treated Cindy Schendt from September 1961 until November 1971. During the course of his treatment, Dewey recommended and conducted various radiation treatments on Schendt. Once Schendt discontinued her contact with Dewey in 1971, she never contacted him again.

In August 1991, Schendt was first diagnosed with breast cancer and subsequently had breast surgery in September 1991 and again in April 1992. Schendt attributed her cancer to the radiation treatment she had received as a patient of Dewey's.

Schendt filed suit on August 19, 1992, alleging negligence and fraudulent concealment. More specifically, Schendt alleged that Dewey was negligent in (1) administering the radiation treatments, (2) failing to warn Schendt of the risks of the treatment, and (3) failing to notify Schendt after the termination of the physician-patient relationship of information establishing a link between radiation and the development of cancer.

With regard to her fraudulent concealment claims, Schendt alleged that during the treatment Dewey fraudulently concealed the risks of radiation treatment, which was the direct and proximate cause of her injuries. Schendt's husband, John Schendt, individually and as guardian of the couple's minor children, also filed suit against Dewey and alleged facts identical to those presented in Schendt's petition. The two cases had been consolidated on appeal.

Dewey demurred to the Schendts' petitions on the basis that the actions were barred by the statute of repose provision as set out in Neb. Rev. Stat. § 25-222 (Reissue 1995). The district court sustained the demurrers and dismissed the actions. The Schendts then appealed to the Nebraska Supreme Court. *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994).

In *Schendt, supra,* this court held that the actions would be time-barred. Instead of sustaining the district court's dismissals, however, we reversed part of the district court's judgment in recognition of the doctrine of equitable estoppel. Moreover, we recognized that it would be possible to state a cause of action for malpractice in which Dewey might be equitably estopped from raising the statute of repose, in the event that the petitions could be amended to establish that Dewey fraudulently concealed a material fact, that the fraudulent concealment prevented the Schendts from bringing their actions within the confines of § 25-222, and that the actions were brought within a reasonable time after discovery of the fraudulent concealment.

On remand, the Schendts amended their petitions. The petitions stated (1) that Dewey fraudulently concealed or misrepresented the risks and consequences of the treatment process during the course of the treatment, (2) that Dewey fraudulently concealed or misrepresented the risks and consequences of the treatment process after the treatment process and continuing to date, and (3) that one or both of these acts or a failure to act prevented the Schendts from initiating actions within the confines of § 25-222.

After answering the amended petitions, Dewey moved for summary judgment. Such motions were sustained by the district court on October 4, 1995.

In reaching its decision, the court considered Schendt's deposition. Schendt stated that she had been treated by Dewey during the years 1961 to 1971 for asthma, that treatment included radiation therapy, and that Dewey never discussed risks associated with receiving such treatment. The court also considered the affidavit of Dr. Robert B. Thompson, a board-certified physician practicing radiation oncology. The affidavit provided in pertinent part as follows:

> Based upon my knowledge, education, and experience, I am familiar with the general body of knowledge available to the medical community regarding the inherent risks of human exposure to radiation, including human exposure to . . . low doses of x-rays, during the period of time beginning in 1961 and ending in 1971.
>
> . . . I know that a known risk of human exposure to radiation, during the time period beginning in 1961 and ending in 1971, was the carcinogenic potential of x-ray irradiation.
>
> . . . [T]he risk of contracting cancer from exposure to radiation including human exposure to low doses of x-rays, during the time period beginning in 1961 and ending in 1971, would be considered material information especially with regard to the treatment of children, and consequently, it should have been communicated to a patient exposed to this type of radiation.

The court also considered the deposition of Dewey. When asked whether he believed that the doses he was using were presenting a risk to his patients, Dewey answered as follows: "In large doses, certainly, but we were told by our radiology consultant that the dosage we used and the amount of treatments we gave were perfectly safe."

Dewey was also asked for his opinion regarding a relationship between the radiation and cancer: "Q. All right. Do you have any opinion today as to whether there's a relationship between radiation and the subsequent formation of cancer? A. With my patients I have a very definite opinion. Q. Okay. A. There's no relationship."

Throughout the deposition, Dewey was questioned as to whether he discussed with anyone the safety of the radiation treatments he was administering and whether this form of treatment was conventional:

Q. Did you ever make inquiry of anybody as to whether there was a safe form of treatment?

A. Not other than the people I've already mentioned.

Q. So we understand, that was Doctor Simon and Doctor Kelly sometime in the '50s?

A. I believe, yeah.

Q. Okay. Then is it fair to say you never conferred with anyone else about the safety of using radiation?

A. That's correct.

Q. And you never sought out any texts or journals or articles about the use of radiation?

A. No. Again, as I said, there was no reason to think I needed to.

Q. Did it ever occur to you, Doctor . . . that if you were the only allergist using this treatment, that there may be some reasons that others weren't using it?

Do you know of any other allergist that used this as an accepted method of treatment?

A. Yeah.

On October 12, 1995, the Schendts moved for a new trial. Their motions were overruled. The Schendts subsequently appealed. Pursuant to our power to regulate the caseloads of the Nebraska Court of Appeals and this court, on our own motion we removed this case to our docket. The cases filed by the Schendts have been consolidated on appeal.

On appeal, the Schendts assign the following errors: (1) The trial court erred in granting Dewey's motion for summary judgment because there existed a genuine issue of material fact concerning Dewey's fraudulent concealment and Dewey was not entitled to a judgment as a matter of law, and (2) the trial court erred in overruling the Schendts' motions for new trial.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit

of all reasonable inferences deducible from the evidence. *Bowling Assocs. Ltd. v. Kerrey, ante* p. 458, 562 N.W.2d 714 (1997).

When this court addressed the instant case in *Schendt I,* we decided that the actions against Dewey were to be brought no later than 10 years after July 1972, the effective date of § 25-222. We also recognized that a claim of fraudulent concealment would delay the running of this statute of repose as it pertained to a cause of action for malpractice. The petitions filed by the Schendts in 1992 failed to comply with the 10-year requirement. Therefore, the Schendts were obligated to establish a claim of fraudulent concealment against Dewey to toll the statute of repose.

The doctrine of fraudulent concealment estops a defendant from asserting a statute of limitations defense when the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the malpractice. In addition, equitable estoppel arises from active or affirmative efforts to conceal the malpractice. It also arises from a failure to disclose material information when a fiduciary or confidential relationship exists between the physician and the patient. *Muller v. Thaut,* 230 Neb. 244, 430 N.W.2d 884 (1988); *Babcock v. Lafayette Home Hosp.,* 587 N.E.2d 1320 (Ind. App. 1992).

Failure of a physician to disclose material information that he knows, or in the exercise of reasonable care should have known, results in constructive fraudulent concealment. *Muller v. Thaut, supra; Babcock v. Lafayette Home Hosp., supra.* See *Nardone v. Reynolds,* 333 So. 2d 25 (Fla. 1976). Constructive fraud, and accordingly, the basis for estoppel, terminates when the physician-patient relationship terminates or when a patient learns of the malpractice or discovers information which would lead to the discovery of the malpractice through the exercise of reasonable diligence, whichever occurs first. *Umolu v. Rosolik,* 666 N.E.2d 450 (Ind. App. 1996).

In the instant case, there is simply no indication that Dewey took affirmative steps to conceal the risks of radiation treatment. Schendt herself testified that Dewey never spoke with her regarding the effects of radiation treatment. Therefore, we are to

conclude from the record presented to this court on summary judgment that Dewey did not make false statements concerning radiation treatment.

We need not address the remaining assignment of error.

For the foregoing reasons, we hold that the district court correctly sustained Dewey's motions for summary judgment.

AFFIRMED.