WILLIAM A. HOBBS, APPELLANT, V. MIDWEST INSURANCE, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

570 N.W.2d 525

Filed November 7, 1997.   No. S-95-1367.

Mark D. Fitzgerald, of Jewell, Gatz, Collins, Fitzgerald & DeLay, for appellant.

Rebecca K. Salmon, of Luebs, Leininger, Smith, Busick & Johnson, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and STEPHAN, JJ., and FAHRNBRUCH, J., Retired.

WRIGHT, J.

William A. Hobbs sued Midwest Insurance, Inc. (Midwest); Raymond H. Evans; and Great West Casualty Company (Great West) to recover any sum for which he might be liable in two underlying lawsuits and for the cost of his defense in those suits. The district court sustained the defendants' motion for summary judgment and dismissed Hobbs' amended petition with prejudice. Hobbs appealed.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the

judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

Hobbs sued Midwest, Evans, and Great West for compensation against any amount for which Hobbs might be liable as a result of an accident involving a livestock trailer owned by Hobbs. Hobbs also requested a judgment against the defendants for costs of his defense of the lawsuits which followed the accident.

Hobbs owns and operates a ranching and cattle feeding business and maintains several livestock trailers which are used to transport cattle. Hobbs engages independent truckers to pull his trailers, and although he owns the trailers, his practice is to insure the trailers under a truck-tractor policy issued to his dispatcher, Randy Hawk.

Hawk owns a Kenworth Conventional truck-tractor which he uses in his business of pulling livestock trailers. Midwest, acting on behalf of Great West, the insurer used by Hobbs, would not insure Hobbs' livestock trailers unless they were included on an insurance policy covering a motorized vehicle. Since Hobbs did not own a motorized vehicle, he insured his trailers under a policy insuring the truck-tractor owned by Hawk. Hawk purchased insurance for Hobbs' trailers through Evans, an employee of Midwest. Evans knew that the livestock trailers covered under Hawk's insurance policy belonged to Hobbs.

An insurance policy (Policy A) was issued to Hawk and his wife in January 1989, covering Hawk's truck and Hobbs' trailers. The type of liability insurance Hobbs purchased is sometimes called "excess insurance coverage," and the type of liability insurance that drivers who pull trailers purchase is sometimes called "primary coverage insurance." This meant that the liability insurance on Hobbs' trailers would be utilized only if the liability insurance covering a truckdriver was not sufficient to cover a claim.

Because Policy A provided only excess liability insurance, Hobbs requested proof that the independent contractors hauling Hobbs' trailers carried primary insurance. Hobbs required each driver to provide a certificate of insurance proving that he or she

had at least $750,000 of liability insurance. Whenever Hawk or Hobbs hired a new driver, Hawk would notify Evans and make sure that the driver's insurance company sent a certificate of insurance to him. Hawk kept a list of all drivers who had been approved by Evans and who had submitted certificates of insurance.

Late in 1989, Evans contacted Hawk about renewing his insurance policy, and Evans and Hawk both signed an insurance renewal application on December 21, 1989. The evidence indicates that in January 1990 Evans met with Hawk and Hobbs to discuss the proposed changes to the policy. At this meeting, Evans informed Hawk and Hobbs that they did not need liability insurance on Hobbs' trailers, because the drivers who pulled the trailers provided enough liability coverage to cover the trailers. Hobbs testified that Evans said liability insurance on the trailers was "double coverage." Thereafter, Midwest issued a new policy (Policy B) to Hawk for the period from January 7, 1990, to January 7, 1991, which did not provide liability coverage for Hobbs' trailers.

Hobbs testified that Evans suggested that the liability on the trailers be dropped, that he had no intention of dropping the coverage until Evans suggested it, and that he relied upon Evans' assurances and advice that the insurance was not necessary. Hobbs stated that had Evans warned him of the possibility that one of the drivers' insurance coverage would not be sufficient to cover the cost of an accident, he would not have let him cancel it. Hobbs had recently consolidated coverage for all his vehicles, except the trailers, with another insurance company and indicated that if Evans had told him he needed liability coverage on the trailers he would have added them to that policy.

On October 22, 1990, one of Hobbs' drivers, Edward Yelli, was involved in an accident with a motor vehicle while pulling Hobbs' trailer. The accident resulted in the death of Betty Sullivan and seriously injured Joan Kime. At the time of the accident, Yelli was insured through Edison Insurance Company (Edison). After the accident, Edison became insolvent. Kime sued both Yelli and Hobbs in Cherry County District Court, case No. 10052. Kime subsequently dismissed that action and refiled the suit in the same court under case No. 10166. Hobbs filed the

present lawsuit to recover any sum for which he might become liable in the pending Cherry County case and for the costs of his defense in both Cherry County cases. The district court entered summary judgment against Hobbs and dismissed his petition. Hobbs appealed.

## ASSIGNMENTS OF ERROR

Hobbs makes the following assignments of error: (1) that an issue of material fact exists with respect to his negligent failure to warn theory of recovery, (2) that an issue of material fact exists with respect to his negligent misrepresentation theory of recovery, (3) that an issue of material fact exists with respect to his breach of contract theory of recovery, (4) that an issue of material fact exists with respect to his negligent failure to procure theory of recovery, (5) that it was error for the district court to conclude as a matter of law that he assumed the risk of his failure to have liability insurance coverage where such defense was not pled by the defendants in their answer, and (6) that the damages pled in his amended petition were not speculative and that issues of material fact existed with respect to such damages.

## ANALYSIS

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.* We, therefore, review all the facts and inferences therefrom in a light most favorable to Hobbs, in order to determine whether there exists a material issue of fact that would prevent the court from entering a summary judgment against Hobbs.

Hobbs alleges liability based on two theories of recovery: negligence and contract. Hobbs claims that the defendants were negligent in their failure to procure liability insurance, in their representation that the driver's insurance would provide liabil-

ity coverage, and in their failure to warn Hobbs that he was exposed to a risk of liability. Under his contract theory of recovery, Hobbs claims that the defendants breached their contractual duty to provide sufficient insurance for Hobbs' trailers by failing to procure liability insurance for him and by affirmatively advising him to delete liability coverage.

## NEGLIGENT FAILURE TO PROCURE
## LIABILITY INSURANCE

We first address Hobbs' claim of negligent failure to procure liability insurance. An insurance agent or broker who agrees to obtain insurance for another but negligently fails to do so is liable for the damage proximately caused by such negligence. *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991). However, this is not a case where an agent or broker negligently failed to obtain insurance for a client; this is a case where a client asked an agent to drop certain insurance and then protested when the agent complied with the request. It is undisputed that Hobbs did not request liability insurance coverage on his trailers and that Hobbs and Hawk consented to the deletion of liability coverage in the renewed insurance policy. Therefore, liability of the defendants cannot be based upon claims that the insurance agent negligently failed to obtain insurance requested by Hobbs.

## NEGLIGENT MISREPRESENTATION

Hobbs also asserts a claim based upon negligent misrepresentation. In *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994), we stated that liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information. Restatement (Second) of Torts § 552, comment *a.* (1977). Section 552 provides in part at 126-27:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Therefore, in order for Hobbs to recover, he must show that Evans supplied him with false information upon which Hobbs reasonably relied and that Evans failed to exercise reasonable care or competence in communicating such information to Hobbs.

Hobbs contends that the false information was the statement by Evans that liability insurance coverage on his trailer would be double coverage, that it was unnecessary to continue such coverage, and that Hobbs should cancel it. In support of his claim, Hobbs notes that Evans stated that "there's no reason to have [liability insurance on the trailers], because the trucks, by law, have to carry liability insurance up to $750,000." Hobbs testified that Evans characterized the liability insurance on the trailers as "double coverage." Hobbs argues that since he did not have liability coverage on his trailers when Kime sued him, Evans misinformed him that he did not need liability insurance, and that a material issue of fact existed relating to his claim for negligent misrepresentation. We disagree.

As indicated, in order to be liable for negligent misrepresentation, Evans must give Hobbs false information. We conclude that the information given to Hobbs was not false. It is undisputed that Hobbs required all drivers who pulled his trailers to have at least $750,000 of liability insurance on the trailers they pulled and that the drivers were checked annually to ensure that their insurance was current. Therefore, Evans was correct when he told Hobbs that each driver who pulled a Hobbs trailer would be insured and that the liability coverage on the trailers was excess or double coverage. The decisive fact in this case is that Edison, Yelli's insurer, became insolvent after Yelli's accident. Had Edison remained solvent, Hobbs would have had primary liability coverage up to $750,000 from Yelli's insurer. Consequently, the cause of the loss to Hobbs was the insolvency of Yelli's insurer and not the fact that Evans told Hobbs that liability coverage on his trailers was double or excess coverage.

The issue as framed by Hobbs' pleadings is whether the defendants made false representations to Hobbs upon which he relied. Since none of the representations made to Hobbs were false, the reliance upon such representations would not support a cause of action for negligent misrepresentation.

## FAILURE TO WARN

Hobbs' final allegation of negligence is related to the issue of reasonable care. Hobbs claims the defendants failed to warn him that he was exposed to a liability risk when he deleted his liability coverage from the livestock trailers. Liability, if at all, for failure to warn is based upon whether or not the defendants had a duty to warn Hobbs of the risks and consequences of his decision to drop liability coverage on his trailers. Under the facts in the present case, such a duty could arise only if it could be said that the defendants had a duty to anticipate the fact that Yelli's insurance company would become insolvent. It is undisputed that Hobbs understood and knew that by deleting the liability coverage on his trailers, he was relying solely on the liability coverage provided by the drivers who pulled his trailers.

We find no duty on the part of the defendants to warn Hobbs that Yelli's insurance company would become insolvent. Such a duty is beyond the scope and obligation owed to Hobbs by the defendants. We find persuasive the court's reasoning in *Higginbotham & Associates, Inc. v. Greer*, 738 S.W.2d 45 (Tex. App. 1987). Higginbotham's insured suffered a loss when the company with which the insurance had been placed became insolvent and was unable to pay the claim. The appellate court, in finding in favor of the insurance agent, held that

> an agent is not liable for an insured's lost claim due to the insurer's insolvency if the insurer is solvent at the time the policy is procured, unless at that time or at a later time when the insured could be protected, the agent knows or by the exercise of reasonable diligence should know, of facts or circumstances which would put a reasonable agent on notice that the insurance presents an unreasonable risk.

738 S.W.2d at 47.

The insolvency of Yelli's insurer was not reasonably foreseeable by the defendants. Nebraska Insurers Supervision, Rehabilitation, and Liquidation Act, Neb. Rev. Stat. §§ 44-4801 to 44-4861 (Cum. Supp. 1990), provides in part:

> The purpose of the . . . [a]ct is to protect the interests of insureds, claimants, creditors, and the public with minimum interference with the normal prerogatives of the owners and managers of insurers through:

(1) Early detection of any potentially dangerous condition in an insurer and prompt application of appropriate corrective measures;

(2) Improved methods for rehabilitating insurers involving the cooperation and management expertise of the insurance industry.

§ 44-4801.

Pursuant to the act, the director of the Department of Insurance must take action when he determines that an insurer's condition renders the continuance of its business hazardous to its insureds. § 44-4809(2). This requirement applies to all insurance companies doing business in the State of Nebraska. § 44-4802(1). There was no evidence presented that suggests that Evans should have known that Yelli's insurance agency was insolvent or that it would become insolvent in the near future. Therefore, we conclude that the insolvency of Yelli's insurer was not reasonably foreseeable by any of the defendants and that therefore the defendants had no duty to advise Hobbs regarding the condition of Yelli's insurer.

### CONTRACT TO PROCURE LIABILITY INSURANCE

Finally, we address Hobbs' claim that the contract to procure liability insurance existed between Hobbs and the defendants. Hobbs alleges that the defendants breached their contractual duty by failing to procure liability insurance coverage for Hobbs and by advising him to delete the liability coverage previously carried.

From our review of the record, we find that no breach of a contract occurred. First, it is clear from the evidence that a contract to procure liability insurance on the trailers never existed. Hobbs specifically testified that he did not have any contract with Evans. Further, all evidence suggests that the liability coverage for Hobbs' trailers was voluntarily deleted. Therefore, we find that there is no contract to procure liability insurance and, consequently, no breach of that contract.

## CONCLUSION

For the reasons set forth herein, we do not reach any other assignments of error and find that the defendants were entitled

to judgment as a matter of law. The judgment of the district court is affirmed.

AFFIRMED.

GERRARD and McCORMACK, JJ., not participating.