WYATT RICHARDS AND JOAN RICHARDS, HUSBAND AND WIFE, INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF ASHLEY RICHARDS, A MINOR CHILD, APPELLANTS, V. LLOYD MEESKE AND MEESKE LAND & CATTLE CO., INC., A NEBRASKA CORPORATION, APPELLEES.

689 N.W.2d 337

Filed December 10, 2004.   No. S-02-1184.

Sally A. Rasmussen, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellants.

Stephen W. Kay, of Kay & Kay, for appellee Meeske Land & Cattle Co., Inc.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Lloyd Meeske gave his 9-year-old daughter, Ashley Richards, permission to drive an all-terrain vehicle (ATV) on land owned by Meeske Land & Cattle Co., Inc. (Meeske Land & Cattle). Ashley lost control of the ATV and allegedly suffered injuries in the resulting accident. Joan Richards, who is Ashley's mother, and Wyatt Richards, who adopted Ashley after the accident (collectively the appellants), brought suit against Lloyd and Meeske Land & Cattle on Ashley's behalf. Meeske Land & Cattle moved for summary judgment. The trial court entered summary judgment for Meeske Land & Cattle and allowed the appellants to

immediately appeal under Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2002). The Nebraska Court of Appeals affirmed. We affirm in part, and in part reverse.

## I. BACKGROUND

### 1. RELATIONSHIP BETWEEN PARTIES

This case involves an unusual web of relationships. Joan married Lloyd in 1986. During the marriage, they had two children, including Ashley. Lloyd also adopted a child that Joan had from a prior relationship. Lloyd and Joan divorced in either 1992 or 1993. Joan later married her current husband, Wyatt. Since the accident, Wyatt has adopted Ashley and her two sisters. Thus, when the accident occurred, Lloyd was Ashley's biological and legal father.

Ashley's accident occurred when she was visiting Lloyd. Lloyd lives on and farms land owned by Meeske Land & Cattle. At the time of the accident, Henry Meeske (Lloyd's grandfather) served as the corporation's president and treasurer, and Pauline Meeske (Lloyd's great-aunt) served as the vice president.

It is clear that Lloyd was neither a shareholder in, nor an officer of, Meeske Land & Cattle. The evidence, however, on the legal relationship between Lloyd and Meeske Land & Cattle is sketchy. Some evidence suggests that Meeske Land & Cattle leased to Lloyd the land on which the accident occurred and that the corporation was, in effect, an out-of-possession landlord. But other evidence suggests that Meeske Land & Cattle used the land for corporate purposes and that Henry was regularly on the land to oversee these corporate activities. Because this is an appeal from a grant of summary judgment, we cannot resolve disputes in the evidence. See *Woodhouse Ford v. Laflan, ante* p. 722, 687 N.W.2d 672 (2004). Thus, like the Court of Appeals, we will assume that Lloyd and Meeske Land & Cattle copossessed the land.

### 2. ASHLEY'S ACCIDENT

The accident occurred in December 1996 while Ashley and her two sisters were visiting Lloyd. Lloyd's two stepdaughters from his current marriage were also visiting.

On the day of the accident, Lloyd decided to repair a fence near his residence. Initially, Ashley, one of her sisters, and one of Lloyd's stepdaughters helped Lloyd, but after a while, they grew

tired of repairing the fence and asked if they could drive the ATV, which Lloyd owned. Lloyd agreed to let the girls drive the ATV, and he designated a path along which he wanted the girls to drive. The path was located in the area immediately around Lloyd's residence, and, according to Lloyd, he had laid it out so that he could hear the girls while they were driving the ATV.

The girls took turns driving the ATV. Ashley testified that the accident occurred when she swerved to miss a cat that had leapt in front of her. Lloyd, however, testified that Ashley had been driving at about 10 m.p.h., which he described as a "little fast," and lost control when she left the designated path and went through an uneven area.

The day of the accident was not the first time that Lloyd had allowed the girls to drive the ATV. He testified that before the summer of 1996, he had allowed Ashley and her sisters, as well as his two stepdaughters, to ride the ATV as passengers. Lloyd further testified that since the summer of 1996, he had allowed all the girls to drive the ATV.

Ashley's accident was not the first time that someone was injured while using the ATV on the land. Ashley testified that her younger sister had burned herself while trying to get off the ATV. In addition, Lloyd testified that he had had several accidents on the ATV, including a time in 1986 when he rolled the ATV while driving in a pasture.

Joan believed that the ATV was dangerous, and on several occasions, she told Lloyd that she did not want the girls to ride on or drive the ATV. Despite these complaints and his own previous accidents, Lloyd testified that he believed the girls were mature enough and physically large enough to drive the ATV. Lloyd also testified that he did not provide the girls with helmets or any other kind of protective gear when they were using the ATV.

### 3. HENRY AND PAULINE'S KNOWLEDGE OF CHILDREN USING ATV

As noted earlier, Henry and Pauline were officers in Meeske Land & Cattle when the accident occurred. They were elderly and lived together in a house about one-quarter mile from Lloyd's residence.

Neither Henry nor Pauline was present at Lloyd's residence when the accident occurred. Some evidence in the record, however, suggests that on previous occasions, they had seen the girls driving the ATV. Joan testified that during the summer of 1996, the girls were visiting Lloyd. When she arrived to pick up the girls, they were riding the ATV. According to Joan, Henry and Pauline, as well as Lloyd, were present. Joan claims that she told them that she did not want the girls to ride on the ATV. In addition, Ashley testified that on one occasion, the girls rode the ATV at Henry and Pauline's residence when Pauline was present. It is not clear if Henry was home then. Lloyd testified that Henry and Pauline did not know that he allowed the girls to ride on or drive the ATV.

### 4. PROCEEDINGS BELOW

The appellants filed a petition on behalf of Ashley, naming Lloyd, Henry, Pauline, and Meeske Land & Cattle as defendants. In their answers, each of the defendants denied that they had been negligent and affirmatively alleged that Ashley had been negligent.

The appellants eventually dismissed Henry and Pauline as individual defendants. Meeske Land & Cattle moved for summary judgment. It supported its motion with the pleadings, Lloyd's affidavit, and Ashley's deposition. The appellants opposed the motion with Lloyd's deposition, Joan's deposition, and answers to interrogatories. The trial court granted summary judgment for Meeske Land & Cattle. In addition, the trial court expressly entered judgment and found that there was no just reason for delay. See § 25-1315(1).

The appellants then appealed to the Court of Appeals. In *Richards v. Meeske*, 12 Neb. App. 406, 675 N.W.2d 707 (2004), the Court of Appeals affirmed the trial court's decision. We granted the appellants' petition for further review.

## II. ASSIGNMENTS OF ERROR

In their petition for further review, the appellants assign that the Court of Appeals erred in (1) finding that the duty of Meeske Land & Cattle to foresee the possibility of harm was limited to the day of the accident, (2) setting forth a new policy unsupported by

case law, (3) determining facts which may give rise to differing inferences, and (4) failing to address the appellants' assignment of error that the burden of proof on summary judgment does not shift to the nonmoving party until the movant makes a prima facie case.

## III. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Jensen v. Board of Regents,* ante p. 512, 684 N.W.2d 537 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Plowman v. Pratt, ante* p. 466, 684 N.W.2d 28 (2004).

## IV. ANALYSIS

This case has several murky aspects, and we find it useful to set out a roadmap of the issues we will consider. First, we need to determine how the appellants' claim against Meeske Land & Cattle fits into Nebraska's premises liability framework, a task that, as this case demonstrates, is not always straightforward. After determining where the appellants' claim fits within the framework, we then examine the grounds that the trial court and the Court of Appeals used to grant summary judgment. We conclude that one of these grounds has merit, but that it only entitles Meeske Land & Cattle to partial summary judgment. Finally, we briefly touch on a lurking issue that might possibly justify granting summary judgment for Meeske Land & Cattle. It is whether a possessor of land owes a duty to protect a child lawfully on the land from the negligent parenting decisions of the child's parent. We conclude, however, that it would not be prudent to rule on that issue at this stage of the litigation.

### 1. NEBRASKA'S FRAMEWORK FOR PREMISES LIABILITY AND APPELLANTS' CLAIM AGAINST MEESKE LAND & CATTLE

Within Nebraska's framework for premises liability, there are generally three categories of duties that a possessor of land owes

to those lawfully on the premises. First, the possessor must take reasonable steps to protect the lawful entrant from conditions on the land. See, e.g., *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004); *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003). Second, the possessor must take reasonable steps to protect the lawful entrant from the possessor's dangerous activities. Restatement (Second) of Torts § 341 A (1965). Finally, the possessor must take reasonable steps to protect the lawful entrant from accidental, negligent, and intentional harmful acts of third parties if those acts are foreseeable. See, e.g., *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000); *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999).

While the lower courts recognized that the appellants' claim against Meeske Land & Cattle was based upon premises liability, they had difficulty determining into which category the claim falls. Portions of the trial court's order, the Court of Appeals' opinion, and Meeske Land & Cattle's brief appear to treat the case as one involving a condition on the land. We, however, disagree with this categorization of the appellants' claim against Meeske Land & Cattle.

The issues in a case are framed by the pleadings. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002). Summarized, the appellants' claim against Meeske Land & Cattle consists of the following allegations:

(1) Meeske Land & Cattle was a possessor of the land on which the accident occurred;

(2) ATV's are too dangerous for children Ashley's age to drive, especially when driven without proper safety gear;

(3) Lloyd acted negligently in allowing Ashley to drive the ATV;

(4) Henry and Pauline

(a) were actually aware that Ashley was driving the ATV when the accident occurred, and/or

(b) knew that in the past, Lloyd had allowed children to drive the ATV; and

(5) either because of their knowledge that Ashley was driving the ATV when the accident occurred or because of their knowledge that Lloyd had allowed children to drive the ATV in the past, Henry and Pauline, as officers of Meeske Land & Cattle,

should have exercised reasonable care to prevent Lloyd from allowing Ashley to drive the ATV.

When the allegations are crystallized, the focus is on whether Meeske Land & Cattle, as a possessor of the land on which the accident occurred, should have protected Ashley from Lloyd's decision to allow her to drive the ATV. Thus, we interpret the appellants' claim as one based upon the duty of a possessor of land to protect a lawful entrant from the harmful negligent behavior of a third party.

### 2. REASONS USED BY LOWER COURTS FOR GRANTING SUMMARY JUDGMENT

Having determined where the appellants' claim against Meeske Land & Cattle fits within Nebraska's premises liability framework, we now turn our attention to whether the reasoning used by the lower courts in granting summary judgment to Meeske Land & Cattle was correct. Both courts concluded that to the extent the appellants' claim against Meeske Land & Cattle was based on Henry and Pauline's knowledge that Ashley was driving the ATV when the accident occurred, Meeske Land & Cattle was entitled to summary judgment. In addition, the Court of Appeals held that summary judgment was appropriate because the undisputed evidence showed that any attempt to exercise reasonable care on the part of Henry and Pauline would have been futile.

### (a) Henry and Pauline's Knowledge That Ashley Was Driving ATV When Accident Occurred

In their petition, the appellants alleged that Henry and Pauline actually knew that Ashley was driving the ATV when the accident occurred and that as officers of Meeske Land & Cattle, they should have intervened to stop Lloyd. Both the trial court and the Court of Appeals held that summary judgment was appropriate because the undisputed evidence showed that Henry and Pauline did not know that Ashley was driving the ATV when the accident occurred.

The primary purpose of the summary judgment procedure is to pierce the allegations made in the pleadings and show conclusively that the controlling facts are other than as pled. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002). A party moving for summary judgment must make a prima facie case by

producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Russell v. Bridgens*, 264 Neb. 217, 647 N.W.2d 56 (2002).

In support of its motion for summary judgment, Meeske Land & Cattle presented an affidavit from Lloyd and Ashley's deposition testimony. Both the affidavit and the deposition testimony support the conclusion that Henry and Pauline were not present when the accident occurred. This was sufficient to make a prima facie showing that when the accident occurred, Henry and Pauline did not know that Ashley was driving the ATV. The burden to produce contradictory evidence then shifted to the appellants.

The appellants' evidence, however, also showed that Henry and Pauline were not present when the accident occurred. The appellants suggest that it was possible that Henry and Pauline knew that Ashley was driving the ATV, even though they were not present. But this is nothing more than unsupported speculation. Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment. *Mefferd v. Sieler & Co.*, 267 Neb. 532, 676 N.W.2d 22 (2004). Thus, to the extent that the appellants' claim against Meeske Land & Cattle is based on Henry and Pauline's knowledge that Ashley was driving the ATV when her accident occurred, Meeske Land & Cattle is entitled to summary judgment.

Henry and Pauline's knowledge that Ashley was driving the ATV when the accident occurred, however, was not the only basis for the appellants' claim against Meeske Land & Cattle. The appellants also alleged that even if Henry and Pauline were not present when the accident occurred, both knew that Lloyd had allowed the children to drive the ATV in the past. The appellants argue that because of this knowledge, Henry and Pauline, as officers of Meeske Land & Cattle, should have instructed Lloyd not to allow children to drive the ATV. Thus, the undisputed fact that Henry and Pauline did not know that Ashley was driving the ATV when the accident occurred narrows the scope

of the appellants' claim against Meeske Land & Cattle, but it is not fatal.

### (b) Ability to Prevent Lloyd From Allowing Ashley to Drive ATV

It appears that the trial court did not consider the appellants' claim that Henry and Pauline's past knowledge should have prompted them to instruct Lloyd to not allow children to drive the ATV. The Court of Appeals, however, did consider the issue.

In its opinion, the Courts of Appeals assumed that Meeske Land & Cattle had a duty to protect Ashley from Lloyd's decision to drive the ATV. It also concluded that there was conflicting evidence on whether Henry or Pauline knew that Lloyd had allowed children to drive the ATV on the land in the past. The Court of Appeals, however, noted that Lloyd had ignored Joan when she had told him to stop letting Ashley and her sisters use the ATV. From this, it inferred that even if Henry and Pauline had told Lloyd to not allow children to drive the ATV, he would have ignored them. Thus, the Court of Appeals ruled that summary judgment was appropriate because it was undisputed that any attempt on the part of Henry or Pauline to instruct Lloyd not to allow the children to drive the ATV would have been futile.

The Court of Appeals' conclusion is inconsistent with how an appellate court reviews a grant of summary judgment. It is reasonable to infer from the evidence that Lloyd would have ignored Henry and Pauline if they had instructed him not to allow children to drive the ATV. But summary judgment would be appropriate only if this was the lone reasonable inference that the evidence would support. It is not.

The relationship between Lloyd and Joan was different from the relationship between Lloyd, Henry, and Pauline. The evidence shows that Lloyd and Joan were divorced and that they often clashed on how to raise the children. Because of their hostile relationship, it is not surprising that Lloyd would ignore Joan's instructions that the children were not to ride or drive the ATV. Henry and Pauline, on the other hand, were officers in Meeske Land & Cattle, the entity that allowed Lloyd to live and work on the land on which the accident occurred. Thus, Henry and Pauline, unlike Joan, could have instructed Lloyd that if he

continued to allow children to drive the ATV, he would be endangering his ability to live and work on the land. A fact finder could reasonably conclude that such an instruction, unlike Joan's instructions, would not go unheeded. We conclude that the Court of Appeals erred in ruling that it was undisputed that Lloyd would have ignored Henry and Pauline had they instructed him not to allow children to drive the ATV.

### 3. DUTY OF POSSESSOR OF LAND TO PROTECT CHILD LAWFULLY ON PREMISES FROM PARENT'S NEGLIGENT PARENTING DECISION

■ There is one issue that neither the trial court nor the Court of Appeals considered. As we discussed earlier, the appellants claim that Meeske Land & Cattle had a duty to protect Ashley from Lloyd's negligent parenting decision. It is true that a possessor of land has a duty to protect those lawfully on the land from the accidental, negligent, or intentionally harmful acts of third persons if those acts are foreseeable. See *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999) (holding that university had duty to protect student from reasonably foreseeable fraternity hazing). But we have never decided whether this duty extends to protecting a child lawfully on the possessor's land from the negligent parenting decisions of the child's parent.

■ Determining whether a legal duty exists is a question of law dependent on the facts of a particular case. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). Duty is not sacrosanct in itself but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. *Id.*

Here, a policy consideration might prevent the imposition of a duty on Meeske Land & Cattle to protect a child lawfully on the land from negligent parenting decisions of the child's parents. Courts have traditionally recognized that parents are entitled to discretion in how they raise and discipline their children. As a result, courts have been hesitant to impose tort liability because of a legitimate parental decision. This court, for example, has adhered to a modified version of the parent-child tort immunity, holding that a child cannot recover in tort from his or her parent unless " 'the child is subjected to . . . brutal, cruel, or inhuman

treatment.' " *Pullen v. Novak*, 169 Neb. 211, 223, 99 N.W.2d 16, 25 (1959). See, also, *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1998). We recognize that several jurisdictions have either abrogated the parent-child tort immunity or adopted a more lenient version of the rule. See, e.g., *Gibson v. Gibson*, 3 Cal. 3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971); *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963). See, generally, Annot., 6 A.L.R.4th 1066 (1981 & Supp. 2004). But, most courts and commentators still recognize that parents are entitled to a zone of reasonable discretion, albeit a zone smaller than what Nebraska has traditionally recognized. For example, while the Restatement (Second) of Torts § 895G (1979) repudiates the parent-child tort immunity, the comments to the section provide that when the parent's conduct involves the exercise of parental discretion, the conduct must be "palpably unreasonable" to impose liability. Restatement, *supra*, comment *k.* at 431.

Arguably, the public policy interest in granting discretion to parental judgments suggests that possessors of land should not be required to protect a child lawfully on the land from the negligent parenting decisions of the child's parent, at least when those decisions are not palpably unreasonable. However, it would be imprudent for this court to answer the question at this stage of the litigation. The issue is intertwined with the question whether Lloyd's decision to allow Ashley to drive the ATV can form the basis of Ashley's claim against Lloyd. That claim, however, is still pending in the trial court. Thus, Lloyd is not a party to this appeal. Moreover, the appellants have not briefed the issue. Because of this case's procedural posture, we conclude that it would not be fair to the appellants or Lloyd to issue a definitive ruling on the duty question.

## V. CONCLUSION

Meeske Land & Cattle is entitled to summary judgment on the appellants' claim that it was liable because Henry and Pauline knew that Ashley was driving the ATV when the accident occurred. But the Court of Appeals erred in affirming the trial court's granting of summary judgment on the appellants' claim that Meeske Land & Cattle was liable because Henry and Pauline knew that Lloyd allowed children to drive the ATV and should have taken reasonable steps to stop him. At this stage of

the litigation, we express no opinion on whether a possessor of land has a duty to protect a child lawfully on the land from the allegedly negligent parenting decisions of the child's parent.

AFFIRMED IN PART, AND IN PART REVERSED.

STEPHAN, J., not participating.