NEBCO, INC., A NEBRASKA CORPORATION, APPELLEE, V.
RANDY ADAMS, A CITIZEN OF NEBRASKA, APPELLANT.

704 N.W.2d 777

Filed October 7, 2005.    No. S-04-652.

John M. Boehm, of Butler, Galter & Boehm, for appellant.

Shannon L. Doering for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
NEBCO, Inc., on behalf of its division Ready Mixed Concrete Company (Ready Mixed), filed an action in the district court for Lancaster County against appellant, Randy Adams, seeking payment pursuant to a personal guaranty contract which Adams had executed to guarantee the cost of purchases of concrete by Adams' business from Ready Mixed. Adams' business was identified in the guaranty as "Adams Concrete Construction." At the time Adams signed the guaranty, Adams Concrete Construction was a sole proprietorship. Adams' business was subsequently incorporated as "Adams Concrete Construction Inc." As he argued in district court, Adams claims on appeal that the guaranty is limited to the debts of the sole proprietorship and does not extend to the debts of the corporation. Adams therefore contends that he is not liable for the debts incurred by his corporation, which debts NEBCO sought to recover in this action. The district court determined that Adams was liable on the guaranty and granted NEBCO's motion for partial summary judgment on the issue of liability. The parties stipulated to damages without prejudice to the issue of liability, and the court entered judgment in favor of NEBCO. Adams appeals. Because we conclude that Adams is liable under the guaranty for the debts at issue, we affirm.

## STATEMENT OF FACTS
On April 13, 1992, Adams completed a credit application naming "Adams Concrete Construction" as the applicant for purchases made on account from Ready Mixed, a division of NEBCO. The credit application included a guaranty provision which stated:

> In consideration of any extension of credit by Ready Mixed Concrete Co. hereinafter called "Seller", either now or in the future to the above named credit applicant, on the above terms, or any other terms agreed to by said credit applicant and Seller, the undersigned, unconditionally, personally, jointly and severally guarantee the payment of any and all sums due or which may become due as a result of any such extension of credit . . . .

Adams signed the guaranty and was the only individual to do so. Adams testified at his deposition that at the time the application was completed, his business was a sole proprietorship. NEBCO does not dispute this characterization.

On May 30, 1997, Adams incorporated his business as "Adams Concrete Construction Inc." About this time, an individual gave money to Adams and became a 20-percent shareholder. Adams was the majority shareholder of Adams Concrete Construction Inc., and the record is undisputed that Adams controlled the business which continued to purchase concrete from Ready Mixed as Adams Concrete Construction under the original account number. According to the evidence, this same account number was listed on the credit application in 1992. Adams did not sign a new guaranty after the incorporation, nor did he take steps to terminate the existing guaranty.

Adams stated in his deposition that at some point, he had conversations with NEBCO personnel regarding the incorporation. Adams also stated that payments on the account were made with checks showing his business was incorporated. No such checks were offered as evidence. In contrast to Adams' testimony, NEBCO's credit manager stated in his deposition that NEBCO was not informed Adams Concrete Construction was a corporation and that Adams never requested any alteration of the information listed in connection with the account or a termination of his personal guaranty.

Adams' business fell behind on payments to Ready Mixed. On June 6, 2000, Adams signed a promissory note to Ready Mixed in the amount of $165,786.07. The note was payable in 10 monthly payments beginning July 15, 2000. The note reflected amounts that were due and owing on the account of "Adams Concrete Construction." The record thus shows that 3 years after

the incorporation, Adams signed the note as "Randy Adams, doing business as Adams Concrete Construction" without reference to the corporate status of the business. Adams' business continued to make purchases from Ready Mixed in 2001 and 2002, and the business again fell behind on the account.

On June 13, 2003, NEBCO filed the complaint in district court which gives rise to this appeal. Adams was sued personally, and Adams was named as the only defendant. The complaint asserted two causes of action. The first cause of action was for breach of the guaranty contract. NEBCO alleged that Adams Concrete Construction incurred charges of not less than $228,333.79 on its account between November 2001 and July 2002. NEBCO alleged that when Adams Concrete Construction refused to pay the amounts due and owing on its account, NEBCO sought payment from Adams pursuant to his personal guaranty and that Adams had refused to pay. NEBCO alleged that Adams' refusal to pay was a breach of the guaranty contract and sought judgment from Adams in the amount of sums due on the account plus interest and costs. In its second cause of action, NEBCO alleged that Adams had defaulted on the promissory note and sought judgment in the amount of $40,898.73 plus interest and costs. At some point, Adams confessed judgment on the second cause of action for default on the promissory note, and this cause of action is not at issue on appeal.

On February 5, 2004, NEBCO moved for partial summary judgment on the issue of liability as to the cause of action for breach of the guaranty contract. Adams opposed the summary judgment, claiming that the guaranty pertained only to Adams Concrete Construction as a sole proprietorship and did not extend to debts incurred by the corporation.

Following an evidentiary hearing, the district court concluded that Adams was liable to NEBCO on the guaranty, and on March 3, 2004, the court granted partial summary judgment in favor of NEBCO. The parties subsequently stipulated to the amount of damages without prejudice to liability as to the cause of action for breach of the guaranty contract. On April 23, the court entered judgment in favor of NEBCO in the amount of $228,333.79 on the first cause of action and $40,898.73 on the

second cause of action, plus interest and costs on both causes of action. Adams appeals.

## ASSIGNMENTS OF ERROR

Adams assigns numerous errors and generally asserts that the district court erred in concluding that he was liable on the guaranty and in granting NEBCO's motion for partial summary judgment. Adams specifically asserts, inter alia, that the court erred in failing to conclude as a matter of law that the personal guaranty executed when Adams' business was a sole proprietorship did not extend to debts incurred by the corporation.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Fraternal Order of Police v. County of Douglas*, ante p. 118, 699 N.W.2d 820 (2005).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Plowman v. Pratt*, 268 Neb. 466, 684 N.W.2d 28 (2004).

## ANALYSIS

As Adams argued in district court, he claims on appeal that the guaranty he signed when his business was a sole proprietorship does not extend to the debts of his business after incorporation. He contends that the trial court's conclusion to the contrary was error. Adams urges us to reverse the district court's grant of summary judgment in favor of NEBCO. In contrast, NEBCO claims that because Adams' guaranty was continuing and the nature of Adams' business after incorporation was substantially the same as when the guaranty was signed, Adams should not be released from his obligations under the guaranty. NEBCO contends that the district court did not err in concluding that Adams was liable under the guaranty and entering judgment accordingly. We agree with NEBCO and, therefore, affirm.

We have stated that a guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults. *Rodehorst v. Gartner*, 266 Neb. 842, 669 N.W.2d 679 (2003). We rely on general principles of contract and guaranty law to determine the obligations of the guarantor. *Id.* Because a guaranty is a contract, it must be understood in light of the parties' intentions and the circumstances under which the guaranty was given. See *Baye v. Airlite Plastics Co.*, 260 Neb. 385, 618 N.W.2d 145 (2000) (in contract case appellate court gives effect to parties' intentions at time writing was made).

The guaranty at issue provides, inter alia, that Adams guaranteed the "sums due or which may become due as a result of any such extension of credit" as a result of the sale of concrete to Adams' business. By its terms, the guaranty did not specify a definite duration and was therefore a continuing obligation. See 38 Am. Jur. 2d *Guaranty* § 58 (1999).

Notwithstanding the continuing nature of Adams' guaranty, Adams refers us to numerous cases, not repeated here, which he asserts stand for the proposition that where a sole proprietorship later incorporates, the obligations encompassed by the guaranty executed by the sole proprietor prior to incorporation of the business are extinguished as a matter of law. In this regard, Adams relies on *Teledyne Mid-America Corporation v. HOH Corporation*, 486 F.2d 987 (9th Cir. 1973), in which a married couple guaranteed the debts of a sole proprietorship run by the husband, a business that was later incorporated. The court, in ruling on pretrial motions, refused to hold the guarantors liable for the debts of the corporate entity. Contrary to Adams' reading of the *Teledyne Mid-America Corporation* case, the opinion did not state that guarantors of a sole proprietorship which later incorporates are relieved of their obligations as a matter of law. Instead, *Teledyne Mid-America Corporation* was decided on the facts of the case which showed that after incorporation, the magnitude of the risk associated with the guaranty had changed significantly, justifying release of the guarantors.

In *Teledyne Mid-America Corporation*, the evidence showed that after incorporation, the husband was no longer the holder of the majority of the shares and that the essential nature of the business enterprise of the principal debtor was altered. Given

evidence of fundamental changes to the entity whose debts were guaranteed, the court in *Teledyne Mid-America Corporation* determined that the essential nature of the guarantors' risk had been altered and thus refused to hold the guarantors liable for the debts of the corporate entity.

The court in *Teledyne Mid-America Corporation* did not hold that the guarantors were released simply because of incorporation. Similarly, we decline to hold that a guarantor of the debt of a sole proprietorship is released solely because the business of the principal debtor is later incorporated. Further, although not articulated in these terms, the rationale of the court in *Teledyne Mid-America Corporation* is consistent with principles of contract law, which we have noted above apply to guaranties. In this regard, we recognize that as a matter of contract law, an appellate court will give effect to the parties' intentions at the time the writing was made. *Baye v. Airlite Plastics Co., supra.* Determination of the guarantor's obligation under the guaranty contract after incorporation must be evaluated by reference to the terms of the guaranty and decided on a case-by-case basis.

■ It has been observed that whether incorporation materially alters the nature of the performance required of the guarantor so as to justify releasing the guarantor from his or her guaranty obligations is important to the determination of liability and that "an alteration in risk is particularly pertinent to materiality." *Bernardi Bros., Inc. v. Great Lakes Distributing*, 712 F.2d 1205, 1207 (7th Cir. 1983). We agree that liability under a guaranty contract should be consistent with the risk the guarantor could have anticipated when assuming the risk under the guaranty.

Our recognition of a risk analysis to determine whether a guaranty for the debts of a sole proprietorship will extend to the debts of the business after incorporation is consistent with the approach adopted by other courts. See *Loving & Associates, Inc. v. Carothers*, 619 N.W.2d 782 (Minn. App. 2000) (cases collected). Summarizing the risk analysis approach used by various courts, the court in *Fehr Bros. v Scheinman*, 121 A.D.2d 13, 19, 509 N.Y.S.2d 304, 308 (1986), stated: .

> The test which has evolved is to determine whether the changes in the entity, the debts of which . . . are guaranteed[,] significantly alter the business dealings between the

debtor and the creditor and the nature of the guarantor's undertaking, in particular the degree of risk the guarantor is being obligated to assume.

Both parties refer us to *Loving & Associates, Inc. v. Carothers, supra,* which employed a risk analysis. The court in *Loving & Associates, Inc.* discussed the relevance of changes in the nature of the business of the principal debtor, albeit in various forms of business, and the impact of such changes on the obligations of the guarantor. The *Loving & Associates, Inc.* court stated as follows:

Whether changes in the principal [debtor] are of sufficient magnitude to justify releasing a guarantor is a determination courts must make on a case-by-case basis. *Fehr Bros., Inc. v. Scheinman,* 121 A.D.2d 13, 509 N.Y.S.2d 304, 307-08 (1986). Courts agree that minimal changes do not affect a guarantor's obligation. *See* Annotation, *Change in Name, Location, Composition, or Structure of Obligor Commercial Enterprise Subsequent to Execution of Guaranty or Surety Agreement as Affecting Liability of Guarantor or Surety to the Obligee,* 69 A.L.R.3d 567, 572 (1976). The reincorporation and name-change of a principal, for example, have been held to be insufficient to discharge a guarantor's obligations absent a corresponding change in operating procedures or business structure. *See, e.g., Folk v. Continental Can Co.,* 97 F.2d 322, 324 (4th Cir.1938) (upholding guaranty after change in principal's business structure on finding that "[t]he business of the old company was conducted as usual by the [new company] with substantially the same officers and with the same assets which the new company had absorbed"). This is particularly true when the guarantor himself participates in the change or the change could reasonably have been anticipated. *See, e.g., New York Am., Inc. v. Hub Advertising Agency,* 136 Misc. 596, 240 N.Y.S. 367, 368 (N.Y.City Ct.1930) (holding guarantor was "estopped from using the cloak of a corporate entity to which he himself was a party to relieve him of any liability under [guaranty issued before incorporation to secure partnership's debts]") . . . .

Whether more substantial changes in the principal [debtor] affect a guarantor's obligation depends primarily on (a) whether the changes result in a new principal in terms of management, control, operating procedures, and business dealings; and (b) whether the changes materially alter the nature of the performance required of the guarantor. Thus, changes that allow the principal [debtor] to survive as an independent entity and do not affect the guarantor's original undertaking do not discharge a guaranty. *See, e.g., Alton Banking & Trust Co. v. Sweeney*, 135 Ill.App.3d 96, 89 Ill.Dec. 926, 481 N.E.2d 769, 773-74 (1985) (change in principal's business from used-car lot to new-car dealership did not constitute material change warranting guarantor's release from obligations under continuing guaranty, where guarantor owned both businesses and assented to the change, and amount of dealership's indebtedness did not exceed amount specified in guaranty); *New York Am.*, 240 N.Y.S. at 368 (partnership's decision to incorporate did not release partner-guarantor from liability for new corporation's debts because new corporation continued to conduct same business, at same address, under same name, with same directors and stockholders; business relation between creditor and principal [debtor] continued unaffected; and partner-guarantor participated in decision to incorporate and became stockholder and director of newly formed corporation); *Caldor, Inc. v. Mattel, Inc.*, 817 F.Supp. 408 (S.D.N.Y.1993) (finding that merger and subsequent spinoff of subsidiary, with resulting loss of control by parent-guarantor, did not fundamentally alter parent-guarantor's risk under guaranty because subsidiary continued to operate same business under substantially same conditions as before merger and spinoff).

*Loving & Associates, Inc. v. Carothers*, 619 N.W.2d 782, 787-88 (Minn. App. 2000).

■ The instant case was before the court on NEBCO's motion for partial summary judgment. A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Richards*

*v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.*

The evidence presented by NEBCO showed that Adams signed the guaranty for Adams Concrete Construction; that Adams' business purchased concrete from Ready Mixed on the same account at Adams' direction, both before and after incorporation; that Adams' business owed Ready Mixed money on account; and that after demand, Adams' business failed to pay NEBCO. Demand was thereafter made on Adams as guarantor, and upon his failure to pay, NEBCO filed suit against Adams personally.

We further note that NEBCO's evidence showed that Adams participated in the incorporation of his business. See, *D. N. & E. Walter & Co. v. Zuckerman*, 214 Cal. 418, 6 P.2d 251 (1931); *N. Y. American, Inc. v. Hub Advertising Agency, Inc.*, 136 Misc. 596, 240 N.Y.S. 367 (1930). The incorporation did not change the relationship between Ready Mixed and Adams' business. Referring to the record, there was no evidence that Adams' business underwent a change which altered Adams' relationship to his business. To the contrary, based on the evidence presented by NEBCO, Adams continued to control his business after incorporation with no resulting change in the risk he had undertaken as guarantor of the business account.

NEBCO presented evidence showing it was entitled to judgment on the guaranty contract if the evidence was uncontroverted at trial. The burden shifted to Adams, and Adams did not present evidence which showed the existence of a material issue of fact that prevented judgment. We believe it is important that even taking the inferences in favor of Adams, there was no evidence to indicate that the risk Adams guaranteed changed after his business incorporated. Further, although Adams claims on appeal that certain facts, such as whether Ready Mixed knew of the incorporation, were in dispute, in this case, such facts are not material to the resolution of the case and do not preclude entry of partial summary judgment in favor of NEBCO. See *Continental Cas. Co. v. Calinger*, 265 Neb. 557, 657 N.W.2d

925 (2003) (stating that disputed fact must be material to prevent entry of summary judgment). We reject Adams' assignments of error and conclude that the district court did not err in entering judgment in favor of NEBCO.

## CONCLUSION

We conclude that Adams is liable on the guaranty and that NEBCO is entitled to partial summary judgment. Accordingly, we affirm the judgment.

AFFIRMED.

HENDRY, C.J., not participating.