POLLY N. ANDRES, APPELLANT, V. MCNEIL COMPANY, INC., AND E & K OF OMAHA, INC., APPELLEES.

707 N.W.2d 777

Filed December 9, 2005.   No. S-04-953.

Thomas M. Locher and Timothy M. Morrison, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for appellant.

Robert S. Keith and Kellie R. Harry, of Engles, Ketcham, Olson & Keith, P.C., for appellee E & K of Omaha, Inc.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellee McNeil Company, Inc.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Appellant Polly N. Andres sued appellees McNeil Company, Inc. (McNeil), a contractor, and E & K of Omaha, Inc. (E&K), one of McNeil's subcontractors, in the district court for Douglas County, alleging that her home was defectively constructed. Appellees each filed motions that the district court treated as motions for summary judgment. In their motions, appellees asserted that appellant's claims were barred by the applicable statutes of limitations. The district court granted the motions and dismissed appellant's complaint in its entirety. We find no error in that portion of the court's ruling dismissing the complaint as to E&K. However, because we conclude that a genuine issue as to a material fact remains concerning whether McNeil fraudulently concealed pertinent information, thereby preventing appellant from gaining timely knowledge about allegedly defective construction of the home within the 4-year statute of limitations set forth in Neb. Rev. Stat. § 25-223 (Reissue 1995), we reverse that portion of the district court's order that dismissed appellant's complaint against McNeil. Accordingly, we affirm in part, and in part reverse, and remand for further proceedings.

## STATEMENT OF FACTS

Appellant and her husband contracted with McNeil to design and build a house located in Omaha, Nebraska. The house was completed in January 1994. The house had a 1-year warranty on workmanship and materials, with 3 additional years for the roof and 5 additional years for the "Exterior Insulation Finish System," or EIFS, a type of exterior faux-stucco covering. In their briefs, the parties also refer to the EIFS as "Dryvit." The parties agreed during oral argument that the terms "EIFS" and "Dryvit" refer to the same material, the exterior faux-stucco covering on the house. E&K was the subcontractor that installed the EIFS.

On May 28, 2003, appellant filed suit against appellees. The complaint contains five "counts," asserted against appellees as follows: count I, "Breach of Implied Duty to Perform in a Workmanlike Manner," alleged against both appellees; count II, "Breach of Implied Warranty of Habitability," alleged against

both appellees; count III, "Negligence," alleged against both appellees; count IV, "Fraudulent Concealment," alleged against McNeil; and count V, "Breach of Express Warranty," alleged against McNeil.

In summary, appellant alleges that McNeil completed the construction of the home in 1994 and that soon after taking possession of the house, she and her husband began to experience water leaking into the home through the tile roof, resulting in water damage to the interior of the home. Appellant alleges that she contacted McNeil, who in turn contacted a subcontractor, to make repairs to the tile roof. Appellant alleges that the subcontractor made certain repairs to the roof; however, the roof continued to leak. Appellant further alleges that in approximately the fall of 2002, as a result of the ongoing water problems with the roof, she contacted a roofing company that informed appellant that the leaks were caused by improper construction of the roof. Appellant alleges that this was the first information made known to her that the original installation of the roof was improper and that it was at this time she was informed that water intrusion had been detected in certain of the interstitial areas of the house coated with the EIFS material applied by E&K.

Taken as a whole, appellant alleges in her complaint that McNeil fraudulently concealed material facts regarding the defective construction of the house and that McNeil's conduct prevented appellant, despite her diligence, from discovering McNeil's misconduct until 2002. Appellant's specific allegations include the following:

> 6. Subsequent to [appellant's] taking possession of the home, [appellant] continued to request that . . . McNeil complete . . . nonconforming work to complete the home. This nonconforming work included, but was not necessarily limited to, the roof, which leaked. . . . McNeil provided continued assurances that the roof leak was but a minor problem and would be made to conform to workmanlike standards. . . . McNeil called upon a subcontractor . . . to provide necessary inspection and work to conform with the original implied and express warranties . . . . McNeil repeatedly assured [appellant] that the necessary work was completed and these assurances continued.

. . . .

12. . . . McNeil knew of said defects at all pertinent times, but continually assured [appellant] that such defects did not exist and that any leaks could be easily remedied.

. . . .

15. [McNeil's] actions, including his [sic] concealment of material facts, have caused such damage to [appellant's] property that repairs will not restore the property to its original market value. . . .

. . . .

33. . . . McNeil at all times fraudulently . . . concealed the nature of defects and the potential for damages associated with the accumulation of water in the interior of the home.

34. . . . McNeil at all times fraudulently . . . concealed that it had known that during the construction of the home that the original roof subcontractor and E & K, failed to perform proper roof tile installation work and EIFS application, even though repeatedly requested to do so, and concealed that during this same period of time [McNeil] repeatedly requested the roofing contractor to correct work which it had performed, and further concealed that during this time [McNeil] knew that many items about the roofing contractor's work were not acceptable and were not fixed after repeated requests, while disclosing none of this to [appellant]. . . . McNeil further knew of the improper EIFS application but took no action to correct the same and actively concealed it from [appellant].

. . . .

37. Due to [McNeil's] concealment of relevant facts [appellant] does not know with certainty the exact nature of each and every reason for the roof and EIFS failure.

. . . .

41. . . . McNeil concealed and continues to conceal from [appellant] material facts which have prevented [appellant] from discovering [McNeil's] negligence.

42. . . . McNeil's fraudulent concealment . . . ha[s] caused [appellant] damage.

43. [McNeil] should be estopped from asserting any claim of the statute of limitations due to the active

concealment of material facts as noted above preventing [appellant] from asserting her claim prior to disclosure of the material facts in September and October of 2002.

In appellant's complaint, she also alleged that she had sustained various damages and sought relief therefor.

In response to the allegations in appellant's complaint, appellees each filed a motion to dismiss. In the motions to dismiss, each appellee asserted that appellant's complaint failed to state a cause of action because appellant had failed to file her complaint within the applicable statute of limitations. The motions originally came on for hearing on September 4, 2003. Following appellees' submission of evidence in support of their motions, the district court, without objection from the parties, treated the motions as motions for summary judgment and continued the hearing to permit further discovery.

Appellees' motions for summary judgment came on for an evidentiary hearing on March 22, 2004. The parties offered and the court admitted into evidence nine exhibits totaling approximately 600 pages. Appellees' evidence included deposition testimony from appellant and her husband to the effect that appellant and her husband knew of problems with the roof of the house and the EIFS system starting in May 1995 and that these problems had continued into 1997. Attachments to the husband's deposition included five letters from him to McNeil written between August 1994 and September 1996. The letters detail problems with the construction of the house, including water leaks, with resulting damage in the house, and cracks in the EIFS, for which appellant's husband requested that the house be "fully inspected." Referring to the deposition testimony in evidence together with the affidavit of a McNeil project manager and its attached exhibits, also in evidence, appellees argued that appellant and her husband had repeatedly contacted McNeil beginning in 1994 to request remedial work. Accordingly, appellees argued that their evidence showed that appellant's claims were barred by the statute of limitations.

In response to appellees' evidence, appellant introduced the deposition testimony of the subcontractor who had been hired by McNeil to fix the roof leaks. The subcontractor testified that when he made repairs to the roof, he found tears in the felt below

the roof tiles and a failure to cement the tiles on the hips and ridge of the roof, which led to water infiltration, bird infiltration, and deterioration of the roof. Additionally, appellant relied upon the deposition testimony of her husband, who testified that in August 2002, the subcontractor had told him that "way, way back in the beginning," the subcontractor had informed McNeil that as a result of the roof's poor construction, the roof should be replaced, but that McNeil had told the subcontractor simply to address problems as they developed. In the subcontractor's deposition testimony, he denied that he had made this specific representation to appellant's husband, although he did agree that after he had made initial repairs to the roof, he had advised his supervisor, not McNeil, of certain additional repairs that needed to be made and that his supervisor had instructed him not to make the repairs, due to "job costs." In appellant's deposition, she testified to the effect that at the time repairs were being made to her roof, no information was given to her regarding the allegedly faulty construction, and that instead, she was assured the roof was being fixed.

Appellant introduced into evidence a report from a house inspector who had been hired to evaluate the construction of the home. In the report, the inspector noted several problems with the roof and the EIFS covering, which problems had allowed water to accumulate in interior spaces in the home, leading to mold and the need to repair or replace wood, drywall, and other structural portions of the house. In appellant's deposition, she testified that sometime after November 2002, she had the entire roof on the house replaced by Last Time Roofing Company, and that when Last Time Roofing Company replaced the roof, its employees told her that the roofing problems were caused by "improper installation." Appellant's evidence included an affidavit from an estimator with Last Time Roofing Company, who stated in his affidavit that he had inspected appellant's roof prior to its replacement and that in his opinion, improper installation of the roof "allowed water to penetrate the roofing system." He further stated that improper installation problems "required rooftop inspection and specialized knowledge" to recognize or detect.

In an order filed June 30, 2004, the district court concluded that appellant's claims were time barred by the applicable statutes

of limitations and granted appellees' motions for summary judgment. In its order, the district court dismissed appellant's complaint in its entirety. On July 8, appellant filed a motion for "new trial," properly treated as a motion to alter or amend the judgment. See *Strong v. Omaha Constr. Indus. Pension Plan, ante* p. 1, 701 N.W.2d 320 (2005). The district court denied the motion. This appeal followed.

### ASSIGNMENTS OF ERROR

Appellant assigns two errors. Appellant claims the district court erred in (1) sustaining McNeil's motion for summary judgment and overruling appellant's motion for "new trial" and (2) sustaining E&K's motion for summary judgment and overruling appellant's motion for "new trial."

### STANDARDS OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *NEBCO, Inc. v. Adams, ante* p. 484, 704 N.W.2d 777 (2005). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■ Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Harris v. Omaha Housing Auth.,* 269 Neb. 981, 698 N.W.2d 58 (2005).

### ANALYSIS

As noted above, the district court sustained appellees' motions for summary judgment, concluding that "any cause of action against [appellees] was barred . . . by operation of the statute of limitations." In reaching this conclusion, the district court determined that appellant's "claims [were] subject to the limitation periods set forth in Neb. Rev. Stat. § 25-223 (Reissue [1995]) and Neb. Rev. Stat. § 25-207 (Reissue 1995)" and that based upon these statutes of limitations, appellant's claims

against appellees were time barred because they were not filed within 4 years of January 1994. Given the allegations as set forth in the complaint, we conclude that the district court erred as a matter of law when it determined that Neb. Rev. Stat. § 25-207 (Reissue 1995) applied to the complaint. We further conclude that the sole applicable statute of limitations governing appellant's claims is § 25-223.

Section 25-207, upon which the district court relied, provides, in pertinent part, as follows: "The following actions can only be brought within four years: . . . (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud . . . ." We have stated that this portion of § 25-207 sets forth the general statute of limitations for fraud claims. See *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964).

Section 25-223, which we conclude governs this case, provides as follows:

> Any action to recover damages based on any alleged breach of warranty on improvements to real property or based on any alleged deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property shall be commenced within four years after any alleged act or omission constituting such breach of warranty or deficiency. If such cause of action is not discovered and could not be reasonably discovered within such four-year period, or within one year preceding the expiration of such four-year period, then the cause of action may be commenced within two years from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. In no event may any action be commenced to recover damages for an alleged breach of warranty on improvements to real property or deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property more than ten years beyond the time of the act giving rise to the cause of action.

In considering § 25-223, this court has recognized that it is a special statute of limitations applying to builders and

contractors making improvements to real property. See *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). We have indicated that § 25-223 governs actions brought against contractors or builders, "whether based on negligence or breach of warranty." *Id.* at 281, 481 N.W.2d at 428.

■ With respect to arguably competing statutes of limitations, we have previously stated that " '[a] special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject.' " *Kratochvil v. Motor Club Ins. Assn.*, 255 Neb. 977, 986, 588 N.W.2d 565, 573 (1999) (quoting *Murphy v. Spelts-Schultz Lumber Co., supra*). As noted above, appellant has alleged various theories of recovery against appellees. All of her claims, however, are based upon the improvements appellees made to appellant's real property.

Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 698 N.W.2d 58 (2005). Because § 25-223 is a special statute of limitations governing actions against builders and contractors for improvements to real property, and because all of appellant's claims against appellees are derived from appellees' improvements to appellant's real property, we conclude that the sole statute of limitations applicable to appellant's claims against appellees is the statute of limitations set forth in § 25-223. We, therefore, conclude that the district court erred, as a matter of law, in concluding that the statute of limitations set forth in § 25-207 governed any of appellant's claims.

We note that § 25-223 contains a discovery provision, which provides that if a cause of action is not discovered within the statute's 4-year period, or within 1 year preceding the expiration of such 4-year period, then the cause of action may be commenced within 2 years from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. In her brief on appeal, appellant claims, inter alia, that the defects in the construction of her house were not apparent and that thus, the district court erred in sustaining appellees' motions for summary judgment because appellant was unable to discover the source of the problems within the

4-year statute of limitations period set forth in § 25-223. We disagree with appellant's argument and determine that appellant had knowledge that problems existed within the meaning of the discovery rule.

"Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court." *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 417, 507 N.W.2d 275, 281 (1993). Under the discovery principle, discovery occurs when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. *Id.* We have stated that "[i]t is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed." *Board of Regents v. Lueder Constr. Co.*, 230 Neb. 686, 696, 433 N.W.2d 485, 491 (1988).

In the instant case, there is no dispute that appellant was aware from essentially the time she took possession of the home that water leaked into the house and that such condition persisted until appellant had the roof replaced. Appellant testified that "[e]ventually" every room except for the library and one bedroom leaked. Moreover, there is evidence that appellant was aware beginning in at least August 1994 of exterior cracks in the EIFS. Although appellant may not have known the source of the leakage or cracks, the record reflects that within 1 year of her taking possession of the house, she was aware of the problems ultimately giving rise to this lawsuit. We, therefore, reject appellant's discovery-related argument.

In her brief on appeal, appellant invokes the doctrine of fraudulent concealment and argues that notwithstanding the passage of 4 years and the provisions of § 25-223, the district court nevertheless erred in sustaining appellees' motions for summary judgment. We read appellant's argument as asserting that appellees fraudulently concealed material facts, which prevented appellant from discovering her causes of action against appellees, and that as a result, appellees should be estopped from asserting the statute of limitations defense.

■ This court has previously determined that the doctrine of fraudulent concealment may render a statute of limitations defense unavailable. See, *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997); *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988). We have recognized that

"[t]he general rule supported by the decisions in most jurisdictions is that the fraudulent concealment of a cause of action from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action . . . ."

See *Muller v. Thaut*, 230 Neb. at 256, 430 N.W.2d at 892 (quoting with approval 51 Am. Jur. 2d *Limitations of Actions* § 147 (1970) regarding fraudulent concealment).

■ We have explained that in order to successfully assert the doctrine of fraudulent concealment and thus estop the defendant from claiming a statute of limitations defense, the plaintiff must show "the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the [misconduct]." *Schendt v. Dewey*, 252 Neb. at 984, 568 N.W.2d at 213. See, also, *Rucker v. Ward*, 131 Neb. 25, 33, 267 N.W. 191, 195 (1936) (stating that defendant cannot " 'avail himself of the statutes of limitation as a defense,' " when defendant " 'wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of suit,' " quoting *Liberty Nat. Bank v. Lewis*, 172 Okla. 103, 44 P.2d 127 (1935)). We have stated that, generally, for fraudulent concealment to estop the running of the statute of limitations, the concealment must be manifested by an affirmative act or misrepresentation. *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994), *disapproved on other grounds, Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998). We have also stated that fraudulent concealment can apply regardless of the nature of the cause of action. See *Muller v. Thaut, supra.*

■ In our cases, we have recognized limitations on a plaintiff seeking to invoke the doctrine of fraudulent concealment.

"Under the doctrine of fraudulent concealment, the plaintiff must show that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired . . . ." See *Upah v. Ancona Bros. Co.*, 246 Neb. at 594, 521 N.W.2d at 902. Further, we have stated that " 'if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel.' " See *MacMillen v. A. H. Robins Co.*, 217 Neb. 338, 341, 348 N.W.2d 869, 871 (1984) (quoting *Luther v. Sohl*, 186 Neb. 119, 181 N.W.2d 268 (1970)). In the present case, the parties raise no issue as to whether appellant exercised due diligence, and with the exception of our noting that appellant has adequately pled diligence, we make no comment as to whether the evidence supports appellant's claimed exercise of diligence.

In support of her claim that appellees should be estopped from raising the statute of limitations defense due to their own conduct, appellant refers us to authorities that have concluded a defendant's efforts to repair a purported defect and assurances given in conjunction therewith are sufficient to estop the defendant from raising the statute of limitations defense. See, generally, *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. 1985) (stating that defendant's representation to plaintiff that repairs had been made "implicitly concealed from the plaintiff that there may have been latent defects in the roofing material"). See, also, *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618 (Minn. App. 2000) (stating that genuine issue of material fact existed as to whether defendant was equitably estopped from asserting statute of limitations defense because of defendant's assurances that defect had been repaired). In an effort to avoid application of the doctrine of fraudulent concealment, appellees argue that efforts to repair should not toll the statute of limitations and that appellant's action is time barred. See, generally, *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979) (seller's attempt to repair did not toll statute of limitations); *Tomes v. Chrysler Corp.*, 60 Ill. App. 3d 707, 377 N.E.2d 224, 18 Ill. Dec. 71 (1978) (efforts to repair do not toll statute of limitations). Contrary to the parties' arguments, resolution of whether a defendant's efforts to repair a defective item, with or without

assurances that the repair has been made, will estop the running of the statute of limitations is not decisive to the outcome of this matter on appeal. Rather than mere assurances, in the instant case, appellant asserts that there was actual concealment of the defective manner in which the house was constructed and that if established, such actual concealment would permit application of the doctrine of fraudulent concealment, thus estopping appellees from invoking the statute of limitations defense.

Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2004) provides, inter alia, that "judgment sought shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Because we have previously stated that the pleadings frame the issues to be considered on a motion for summary judgment, *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998), we initially consider the allegations set forth in appellant's complaint.

As quoted at length above, throughout appellant's complaint, she has alleged that notwithstanding her efforts, fraudulent concealment prevented her from discovering the defective construction of the house until 2002. Appellant's complaint claims, inter alia, that as a result of fraudulent concealment, appellees are estopped from pleading the statute of limitations as a defense because, through deception and repeated assurances that problems were being remedied, material facts were concealed from appellant, and that despite her diligence, she was unable to timely learn about the defective construction of her home. Taking the allegations in the complaint as a whole, we conclude that appellant has in essence pled the doctrine of fraudulent concealment in an effort to avoid application of the statute of limitations.

We turn next to the evidence presented at the hearing on appellees' motions for summary judgment to determine the propriety of the district court's ruling granting the motions. It is fundamental that the primary purpose of a summary judgment procedure is to pierce the allegations made in the pleadings and to show conclusively that the controlling facts are otherwise than alleged and that the moving party is entitled to judgment as a matter of law. See *New Tek Mfg. v. Beehner, ante* p. 264, 702 N.W.2d 336 (2005). A party moving for summary judgment

must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *NEBCO, Inc. v. Adams, ante* p. 484, 704 N.W.2d 777 (2005); *Richards v. Meeske,* 268 Neb. 901, 689 N.W.2d 337 (2004). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *NEBCO, Inc. v. Adams, supra.*

In support of their motions for summary judgment, appellees presented evidence to the effect that appellant was aware of the matters complained of since 1994 and that therefore, her action filed in 2003 was time barred. Appellant offered evidence to refute appellees' claim relative to the statute of limitations. Appellant introduced into evidence the deposition testimony of the subcontractor who had been hired by McNeil to fix the leaks, who stated that when he made repairs to the roof, he found tears in the felt below the roof tiles and a failure to cement the tiles on the hips and ridge of the roof, which led to water infiltration, bird infiltration, and deterioration of the roof. Appellant also introduced into evidence the deposition testimony of her husband, who stated that the subcontractor had told him that when the subcontractor had informed McNeil that as a result of the roof's poor construction, the roof should be replaced, McNeil had told the subcontractor simply to address problems as they developed. Appellant suggests that under these circumstances, McNeil's conduct amounted to actual concealment. Appellant further presented evidence that at the time the subcontractor was repairing the roof, appellant was not informed that the roof had been constructed badly, and that to the contrary, she was repeatedly given assurances over the time period of 1995 to 2002 that the roof was being fixed. McNeil presented evidence that specifically disputed much of appellant's evidence regarding the claimed representations, conversations, and concealment.

Given the pleadings and the evidence adduced during the summary judgment hearing, and giving the inferences in favor of appellant as the nonmoving party, we conclude that there are genuine issues of material fact concerning what McNeil knew regarding the defective construction of the roof and what McNeil told the subcontractor to say and do relative to the defects. The resolution of these facts could estop McNeil from asserting the statute of limitations defense due to fraudulent concealment. That is, if McNeil fraudulently concealed pertinent information from appellant, thereby preventing appellant, despite her efforts, from gaining timely knowledge about allegedly defective construction of the home within the 4-year statute of limitations set forth in § 25-223, McNeil may be properly estopped from invoking the statute of limitations defense. Viewing the evidence in the light most favorable to appellant and giving appellant the benefit of all reasonable inferences deducible from the evidence, see *NEBCO, Inc. v. Adams, supra*, we conclude that McNeil was not entitled to summary judgment as a matter of law and that the district court erred in sustaining McNeil's motion for summary judgment.

In contrast to McNeil, the record does not contain evidence of any affirmative acts by E&K to conceal material facts with regard to the alleged defective construction of the home, and thus, there is no evidence that E&K should be barred from asserting the defense of statute of limitations. Assuming and specifically without concluding that appellant could assert a cause of action against E&K for defective construction of the house, we conclude that the district court did not err in entering summary judgment in favor of E&K and dismissing appellant's complaint against E&K.

## CONCLUSION

The district court concluded that appellant's action was time barred as to both appellees. However, because there exists a genuine issue of material fact impacting whether McNeil fraudulently concealed pertinent facts concerning the allegedly defective construction of the home, thereby estopping McNeil from raising the statute of limitations as a defense, the district court erred in entering summary judgment in favor of McNeil. The judgment of the district court sustaining McNeil's motion

for summary judgment is reversed, and this matter is remanded to the district court for further proceedings. There being no genuine issues of material fact concerning the judgment of the district court sustaining E&K's motion for summary judgment, it is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

CONNOLLY, J., participating on briefs.